# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | **Cause No. 1:14-cv-00172** |
| | ) | |
| THE STATE OF TEXAS ETHICS COMMISSION, | ) | |
| and NATALIA LUNA ASHLEY, in her capacity | ) | |
| as Interim Executive Director of the Texas | ) | |
| Ethics Commission, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COME NOW Plaintiffs Empower Texans, Inc. and Michael Quinn Sullivan and bring this action for declaratory and injunctive relief, as well as nominal damages, and complain as follows:

## I.    INTRODUCTION

1.    This is a relief case seeking declaratory and injunctive pursuant to 28 U.S.C. §§ 2201-02, 28 U.S.C. §§1331 and 1334, and Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C. § 1983 to bar the enforcement of provisions of the Texas Election Code ("**Election Code**") and Texas Government Code ("**Government Code**") that, facially and as applied by the Texas Ethics Commission ("**TEC**"), violate the First and Fourteenth Amendments to the United States Constitution.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the claims arising under 42 U.S.C. § 1983

1

pursuant to 28 U.S.C. §§ 1331 and 1343. The jurisdiction of the Court over the claims arising

under the First and Fourteenth Amendments is founded on 28 U.S.C. §§ 1331 and 1343.

Additionally, Plaintiffs seek a declaration of their rights in this case of actual controversy within

this court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

3.     Venue is proper in this Court under 28 U.S.C. 1391(b) because defendant Natalia

Luna Ashley resides in the Western District of Texas and all defendants reside in Texas.

4.     Additionally, a substantial part of the events giving rise to this claim occurred in

this district.

### III.   PARTIES

5.     Plaintiff Empower Texans, Inc. ("**EMPOWER**") is a Texas Nonprofit

Corporation with offices located in Travis County, Texas.

6.     Plaintiff Michael Quinn Sullivan ("**Sullivan**") is an individual who resides in

Travis County, Texas.  He is a member of the Board of Directors and President of EMPOWER.

7.     Defendant TEC is the governmental agency charged with administering and

enforcing the provisions of the Election Code and Government Code at issue in this case,

including initiating civil enforcement actions or referring matters to the appropriate prosecuting

attorney for criminal prosecution.  The Texas Ethics Commission is located at 201 East 14th

Street, 10th Floor, Austin, Texas 78701.

8.     Defendant Natalia Luna Ashley ("**Ashley**") is the Interim Executive Director of

the Texas Ethics Commission.  She is sued in her official capacity.

### IV.   STATEMENT OF ISSUES PRESENTED

9.     Whether the TEC, in the investigation of a sworn complaint, may use a subpoena

to require the disclosure of information from the Defendants which is otherwise constitutionally

protected.

10.     Whether the TEC should be required to adopt procedural rules, rules of evidence and appellate procedure (including mandamus and interlocutory appeal) in their hearings to safeguard citizens from the risk of erroneous deprivation of their Constitutional rights and to ensure the uniform application of the law to all persons who are subject to TEC hearings.

## V.     STATEMENT OF FACTS

11.     EMPOWER was incorporated on or about April 14, 2006.  See Exhibit 1.  On November 7, 2006, EMPOWER began doing business using the name ***Texans for Fiscal Responsibility*** throughout the State of Texas. See Exhibit 2.  On January 6, 2007, EMPOWER was grated, pursuant to its application to the Internal Revenue Service, tax exempt status under Internal Revenue Code § 501(c)(4).  See Exhibit 3.

12.     From its inception, EMPOWER has had as its primary purpose the informing of voters, taxpayers and elected officials about policy solutions that are consistent with the principles of individual liberty and free markets, while working to build support for those policies among key constituencies (voters) to create and sustain a system of strong fiscal stewardship within all levels of Texas government, ensuring the greatest amounts of economic and personal liberty, and promoting public policies that provide individuals with the freedom to use their strengths and talents in pursuit of greater opportunities.  EMPOWER accomplishes it goal by direct communications with voters through the publication of online newsletters, news bullitens, blog posts, emails, social media updates, and direct mail.  It also holds numerous town hall meetings, including several involving leading fiscal conservatives such as Texas Governor Rick Perry, Texas Attorney General Greg Abbott, and members of the Texas Legislature.

13.     EMPOWER provides high-valued and very important endorsements of certain Texas state-level candidates that identify with, follow and promote a conservative fiscal agenda. EMPOWER also recognizes those public officials who emulate this in their public service by bestowing fiscal accountability awards.

14.     EMPOWER distributes weekly email newsletters to over 50,000 addresses, chiefly outlining government policy that has economic implications at the state level.

15.     Additionally, Plaintiff Sullivan, EMPOWER's President, is frequently quoted in print media sources in major Texas markets such as the Houston Chronicle, Dallas Morning News and the Austin American Statesman.[1] See Exhibit 4 (*Texas Monthly*, Jan 2013).  Mr. Sullivan is a weekly guest on radio programs throughout the State of Texas and EMPOWER has over 68,000 fans on its Facebook site (the Facebook site uses the Texans for Fiscal Responsibility name), has posted over 170 YouTube videos that have thousands upon thousands of views, and has over 5,000 Twitter followers (the Twitter handle is @EmpowerTexans). Furthermore, Plaintiff EMPOWER's staff has been invited to give hundreds of speeches before groups and organizations around the State of Texas. It is through these forms of media that EMPOWER communicates regularly with its members.[2]

16.     Plaintiff Sullivan, a current journalist and former newspaper reporter, was employed as President of EMPOWER beginning in April 2006, a position that he currently holds.  Mr. Sullivan is also a member of the Board of Directors of EMPOWER.

17.     During the 2007 Regular Session of the Texas Legislature, EMPOWER engaged

---

[1]     For example, a Westlaw Texas newspaper and magazine search of the phrase "Texans for Fiscal Responsibility" results in over 210 articles that mention the organization, from almost all of the major newspapers in Texas and such sources as the New York Times and U.S. News & World Reports.

[2]     Members of EMPOWER are those individuals who have filled out a form providing their name and personal information such as phone numbers and physical address, and their email addresses.  Effectively, these members are subscribers.

in efforts to make Texans aware of the fiscal situation of the State of Texas and informed them as to how to call on Legislators to return a tax surplus that was in excess of $13 billion and work to uphold reforms to the Children's Health Insurance Program.  At the conclusion of the 2007 Legislature, EMPOWER developed a scorecard system that was published online and, in certain circumstances, mailed to voters grading legislators on their Fiscal Responsibility Index, a compilation of factors based upon bill authorship and each Legislator's vote on legislation, to registered voters throughout Texas.  Online publication of the scorecard is an important accountability and public education measure that EMPOWER continues to this day.

18.    Following the 2007 Texas Legislative Session, Plaintiff Sullivan formed Empower Texans PAC, a Texas general purpose political committee.  See Exhibit 5.  This PAC, which is a separate and distinct legal entity not under the direct operation or control of EMPOWER, has periodically received and disclosed contributions from EMPOWER for administrative and overhead expenses.[3]  Furthermore, Empower Texans PAC continues operations today and complies with all state and federal campaign finance regulations.[4]  The PAC discloses all of its donors and expenditures as well as candidates and measures it supports or opposes.[5]  Despite constant protestations of Plaintiffs, Defendant TEC regularly confuses the disclosed activities of Empower Texans PAC with those of EMPOWER.

19.    In January 2010 the U.S. Supreme Court issued an opinion in *Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010) which had the effect of invalidated Texas' longstanding ban against corporate electioneering activity.

---

[3]      A corporation is generally prohibited from making a contributing to a general purpose political committee. Tex. Elec. Code § 253.094.  However, as an exception to the prohibition, a corporation is allowed to contribution to a general purpose committee for statutorily authorized overhead type expenses associated with operating a committee.  Tex. Elec. Code § 253.100.

[4]      No sworn complaints have been filed against Empower Texans PAC with the Texas Ethics Commission.

[5]      See http://www.ethics.state.tx.us/php/filer.php?acct=00061927GPAC on the Texas Ethics Commission website for a complete list of all filings made by Empower Texans PAC.

20.     After *Citizens United*, the 82nd Legislature of Texas passed House Bill 2359 to amend the Election Code to incorporate the TEC's advisory opinion regarding changes to the constitutionality of the code. H.B. No. 2359, 82nd Leg. (Tex. 2011).  In relevant part, the bill repealed all sections of the code prohibiting a single corporation from making direct campaign expenditures.

21.     Beginning in 2012, Plaintiff EMPOWER, through its board of directors, mindful of the major purpose limitations on it as a 501(c)(4) organization, chose to authorize the corporate funds to be used for independent expenditures for political activity.  See Exhibit 6. The corporation discloses all of its expenditures as well as candidates and measures it supports or opposes.[6]

22.     On April 20, 2012, sworn complaints SC-3120485 and SC-3120486 were filed by State Representatives Jim Keffer and Vicki Truitt with the TEC against EMPOWER, ("EMPOWER Complaints") and included allegations relating to the alleged failure to report direct campaign expenditures by a person not acting in concert with another person, and, in the alternative, the alleged failure to file a campaign treasurer appointment and campaign finance reports by a general-purpose committee.  The complaints, identically filled out by an agent of Representative Keffer, were based only upon "information and belief."  See Exhibit 7 and 8, respectively.

23.     Also on April 20, 2012, sworn complaints SC-3120487 and SC-3120488, were filed by State Representatives Jim Keffer and Vicki Truitt with Defendant TEC against Plaintiff Michael Quinn Sullivan, in his individual capacity, ("Sullivan Complaints") and included allegations that Mr. Sullivan failed to register as lobbyist for calendar years 2010 and 2011 as

---

[6]     See http://www.ethics.state.tx.us/php/filer.php?acct=00068517GPAC on the Texas Ethics Commission website for a complete list of all filings made by Empower Texans, Inc.

required by Tex. Gov't Code § 305.003.  Similar to the EMPOWER Complaints, those

complaints were based upon "information and belief."  See Exhibit 9 and 10, respectively.

24.     On or about June 5, 2012, Plaintiffs filed verified denials of all the allegations

made by Representatives Jim Keffer and Vicki Truitt.  In those verified denials, Plaintiffs

requested that the TEC conduct a preliminary review hearing and subpoena Representatives Jim

Keffer and Vicki Truitt to appear at the preliminary review hearing to give testimony.

25.     On April 8, 2013, Defendant TEC, despite not having voted to expand their

investigation beyond the original complaints, propounded eight pages of questions on Plaintiff

Michael Quinn Sullivan.  See Exhibit 11.

26.     On April 23, 2013, Defendant TEC further propounded four questions on

EMPOWER, including a request for "…the name and address of each person that made a

contribution to [Empower Texans, Inc.] during the period from January 1, 2011, to December 31,

2011…[and]…the date and amount of the contribution."  See Exhibits 12.

27.     On May 10, 2013, Plaintiffs responded to the questions propounded by TEC and,

along with interposing objections, asserted their statutory and constitutional rights.  See Exhibits

13 and 14.

28.     On June 26, 2013, Defendant TEC delivered a Public Inspection Request to

Plaintiff EMPOWER requesting copies of the application for tax-exempt status filed with the

Internal Revenue Service along with the annual information returns for 2010, 2011, and 2012.

See Exhibit 15.

29.     On July 2, 2013, Plaintiff Michael Quinn Sullivan received two subpoenas to

appear and give testimony at a preliminary review hearing on August 8, 2013 for all four

complaints.

30.     On July 25, 2013, EMPOWER responded to the Public Inspection Request of TEC.

31.     On August 8, 2013, TEC conducted a preliminary hearing on both the EMPOWER and Sullivan Complaints.  In compliance with the TEC's subpoena, Plaintiffs, represented by counsel, appeared at the preliminary review hearing.

32.     On August 21, 2013, TEC issued a subpoena in the Sullivan Complaints to Plaintiff Sullivan for production of documents.  See Exhibit 16.

33.     On September 9, 2013, Plaintiffs filed Objections and Responses to Defendant TEC's subpoenas of documents.

34.     On October 29, 2013, TEC conducted a second preliminary hearing on the Sullivan Complaints wherein they subpoenaed Representative Jim Keffer, Vicki Truitt, Steve Bresnen, and Plaintiffs to appear and give testimony.

35.     October 30, 2013, Defendant TEC conducted a second preliminary review hearing on the EMPOWER Complaints wherein they subpoenaed Representative Jim Keffer, Vicki Truitt, Steve Bresnen, and Plaintiffs to appear and give testimony.

36.     On November 4, 2013, Defendant TEC met and voted to propose a settlement only of the Sullivan Complaints for a $500 civil penalty for 2010 and 2011, each, and the retroactive registering and filing the required monthly lobby disclosures for each month of 2010 and 2011.

37.     On November 13, 2013, Plaintiff Sullivan rejected the settlement offer of TEC because accepting the TEC's settlement offer would require Plaintiff Sullivan to 1) acquiesce in the position of TEC that his activities constituted lobbying; 2) agree that the state statutory definition of lobbying is constitutionally narrow; 3) unconstitutionally require him to pay the

state a lobby fee of $750 before he communicates with public officials; and 4) subject him to possible criminal prosecution.[7]

38.     On January 28, 2014, the TEC issued a Notice of Formal Hearing on the EMPOWER Complaints citing "…that there is insufficient credible evidence of violations of laws administered and enforced by the commission." Additionally, TEC issued a Notice of Formal Hearing on the Sullivan Complaints to be heard at the same time.

39.     On February 12, 2014, a Pre-Hearing Conference on both the EMPOWER and Sullivan Complaints was held by TEC.  Plaintiffs participated in the conference and objected to the lack of procedural rules governing the process and infringement of Plaintiffs' due process rights.[8]  At the conference the TEC voted unanimously to issue two subpoenas, one to each Plaintiff, requesting the production documents by March 5, 2014.  Additionally, the TEC set a schedule whereby pre-hearing motions by Plaintiff will not be heard until March 14, 2014 meaning Plaintiffs have no recourse to the subpoenas that were issued.

40.     The subpoena issued by the TEC and served on EMPOWER, for the EMPOWER Complaints, orders the production of:[9]

> "1.     All written communications (including electronic mail or "e-mail" communications) sent on or after January 1, 2011, from Empower Texans, Inc. or on behalf of Empower Texans, Inc., supporting and opposing candidates, officeholders, and measures in Texas as well as any communications regarding the solicitation and acceptance of, as well as the use of, political contributions and making political expenditures, including, but not limited to, electronic mail communications sent from

---

[7] The failure to register as a lobbyist, if required, is a Class A Misdemeanor. TEX. GOV'T CODE § 305.031. There is also a late filing civil penalty of up to $10,000, and a civil penalty fee for failing to register as a lobbyist of up to three times the amount of compensation, reimbursement or expenditures. TEX. GOV'T CODE §§ 305.033 and 305.032.

[8]     Although statutorily required to do so by the Government Code, the TEC has failed to adopt rules governing the process of conducting a formal hearing. TEX. GOV'T CODE § 571.131(c). A true and correct copy of the transcript of the pre-hearing conference is attached as Exhibit 17 and is incorporated by reference as if set out fully herein.

[9]     A true and correct copy of the subpoena is attached as Exhibit 18 and is incorporated by reference as if set out fully herein.

the following e-mail addresses:

    i.     msullivan@empowertexans.com
    ii.    mqsullivan@empowertexans.com
    iii.   info@empowertexans.com
    iv.   letters@empowertexans.com
    v.    akerr@empowertexans.com

2.     All written documentation of communications and articles published on the Empower Texans website supporting and opposing candidates, officeholders and measures in Texas as well as any communications regarding the solicitation and acceptance of as well as the use of political contributions and making political expenditures from January 1, 2011 until the present."

41.    Additionally, the subpoena served on EMPOWER, for the Sullivan Complaints, a matter to which EMPOWER is not a party, orders the production of:

"1.    All written communications (including electronic mail or "e-mail" communications) sent between January 1, 2010, and December 31, 2011, to any member or member-elect of the Texas Legislature by, from, or on behalf of Michael Quinn Sullivan, including but not limited to, electronic mail communications sent from any of the following electronic mail addresses:

    i.     msullivan@empowertexans.com
    ii.    mqsullivan@empowertexans.com
    iii.   info@empowertexans.com
    iv.   letters@empowertexans.com
    v.    akerr@empowertexans.com

2.     All written communications (including electronic mail or "e-mail" communications) sent between January 1, 2010, and December 31, 2011, to Michael Quinn Sullivan by, from, or on behalf of any member or member-elect of the Texas Legislature including, but not limited to, electronic mail communications sent to any of the following electronic mail addresses:

    i.     msullivan@empowertexans.com
    ii.    mqsullivan@empowertexans.com
    iii.   info@empowertexans.com
    iv.   letters@empowertexans.com
    v.    akerr@empowertexans.com"

42.    On February 13, 2014, the TEC voted to propose new rules regarding what

constitutes a campaign contribution for purposes of reporting under the Election Code. The

purposed rule would encompass contributions that are made to a nonprofit corporation that

elected to make a direct campaign expenditure and would require the reporting of those

contributions. See Exhibit 20.

    43.    The subpoena issued by the TEC and served on Plaintiff Sullivan, for the

EMPOWER Complaints, a matter to which Plaintiff Sullivan is not a party, orders the production

of:[10]

> "1.    All written communications (including electronic mail or "e-mail"
> communications) sent on or after January 1, 2011, to or from Michael
> Quinn Sullivan, as president of Empower Texans, on behalf of Empower
> Texans supporting and opposing candidates, officeholders and measures in
> Texas as well as any communications regarding the solicitation and
> acceptance of, as well as the use of, political contributions and making
> political expenditures, including, but not limited to, electronic mail
> communications sent to the following electronic mail addresses:
>
> > i.    msullivan@empowertexans.com
> > ii.    mqsullivan@empowertexans.com
> > iii.    info@empowertexans.com
> > iv.    letters@empowertexans.com
> > v.    akerr@empowertexans.com"

    44.    Additionally, the subpoena served on Plaintiff Sullivan, for the Sullivan

Complaints, orders the production of:

> "1.    All written communications (including electronic mail or "e-mail"
> communications) sent between January 1, 2010, and December 31, 2011,
> to any member or member-elect of the Texas Legislature by, from, or on
> behalf of Michael Quinn Sullivan, including but not limited to, electronic
> mail communications sent from any of the following electronic mail
> addresses:
>
> > i.    msullivan@empowertexans.com
> > ii.    mqsullivan@empowertexans.com
> > iii.    info@empowertexans.com
> > iv.    letters@empowertexans.com

---

[10]    A true and correct copy of the subpoena is attached as Exhibit 19 and is incorporated by reference as if set out fully herein.

v.    akerr@empowertexans.com

2.    All written communications (including electronic mail or "e-mail" communications) sent between January 1, 2010, and December 31, 2011, to Michael Quinn Sullivan by, from, or on behalf of any member or member-elect of the Texas Legislature including, but not limited to, electronic mail communications sent to any of the following electronic mail addresses:

i.    msullivan@empowertexans.com
ii.    mqsullivan@empowertexans.com
iii.    info@empowertexans.com
iv.    letters@empowertexans.com
v.    akerr@empowertexans.com"

45.    Plaintiff Sullivan and other EMPOWER staff write articles and columns for both EMPOWER and other entities on fiscal and political issues involving the State of Texas.  He relies on sources from the Legislature and elsewhere in state and local government

46.    The TEC has not adopted rules of procedure, rules of evidence or appellate rules (including mandamus or interlocutory appeal) for a formal hearing despite the statutory mandate to do so in effect since September 1, 1993.  TEX. GOV'T CODE § 571.131(c).  Accordingly, Plaintiffs have only the choices to either comply with the subpoenas and produce constitutionally privileged and protected information or violate the subpoenas.

## VI.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF FOURTEENTH AMENDMENT
### RIGHT TO DUE PROCESS
### (42 U.S.C. § 1983)

47.     The Plaintiffs reallege the preceding paragraphs.

48.     Defendants are attempting, under color of state law, to enforce two new unconstitutional interpretations of its statutes and regulations.  The interpretations are being selectively enforced without prior notice to the Plaintiffs or any other corporate entity in Texas.[11] Defendants are attempting to deem any corporation which receives contributions and then uses those contributions for "direct campaign expenditures[12]" to be operating "in concert with another person" so as to trigger the requirement that such a corporation register itself as a "general-purpose committee," with all the restrictions thereof, and file accordingly.

49.     Defendants are also attempting, under color of state law, to interpret legislative scorecarding as lobbying.  In their attempt to enforce these two new interpretations, Defendants have recently served Plaintiffs two subpoenas which, if complied with, would provide Defendants and political opponents of Plaintiffs with information which is now constitutionally protected.

50.     Defendants, through the issuance and service of subpoenas on Plaintiffs, for which Plaintiffs have no recourse, are violating, under color of state law, the Plaintiffs right of

---

[11]     The Texas Ethics Commission is attempting to enforce, in the negative, Texas Election Code, Title 15, Chapter 254 Subchapter J §254.261 "a person not acting in concert with another person who makes one or more direct campaign expenditures and election from the person's own property shall comply with this chapter as if the person were the campaign treasurer of a general-purpose committee that does not file monthly reports under § 254.155."

[12]     The Texas Ethics Commission in its *Advisory Opinion number 489* (2010) states that the phrase "independent expenditure" is interchangeable with the phrase "direct campaign expenditure" in Texas law for the purpose of determining the effects of *Citizens United v. FEC*, 558 US 310 (2010) upon Title 15 of the Texas Election Code.  This oddity must be kept in mind since "direct campaign expenditure" has a different meaning in federal jurisprudence.

association under the First Amendment.

51.     Current First Amendment jurisprudence makes clear that before a state or federal body can compel disclosure of information which would trespass upon First Amendment freedoms, a "subordinating interest of the State" must be proffered, and it must be "compelling." *Federal Election Commission v. Machinists Non-Partisan Political League,* 655 F.2d 380, 389 (D.C. Cir. 1981, *cert. denied*) citing *NAACP v. Alabama*, 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958) (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 265, 77 S.Ct. 1203, 1219, 1 L.Ed.2d 1311 (1957) (Frankfurter, J., concurring)).

52.     The service of subpoenas on Plaintiffs that are massively overbroad in their scope, and to which Plaintiffs have no legal recourse, signal a direct challenge by Defendants to the constitutional protections outlined in *NAACP v. Alabama*, 357 U.S. 449 (1958) and are not supported in state statute.

53.     The subpoenas at issue here request documents, the production of which goes far beyond anything that Plaintiffs would be statutorily required to report even if they were to have committed the violations alleged in the EMPOWER and Sullivan Complains.  In fact, the subpoenas for the production of the documents to Defendants serves no purpose other than to cull through the otherwise constitutionally protected private records of a person (both personal and corporate).  The TEC is attempting to "out" any source that have contacted Plaintiffs or had communications with them so that these sources may be silenced.  This is the very definition of an impermissible chilling effect under the First Amendment.

54.     Retroactive laws are generally disfavored in the law, *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum*

& *Chem. Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring).

**WHEREFORE** Plaintiff respectfully prays the Court to:

    a.    Declare the interpretation of Tex. Elec. Code §254.261 being proffered by Defendants unconstitutional on its face or in the alternative, as applied to EMPOWER;

    b.    Declare the interpretation of TEX. GOV'T CODE §305.002(2) proffered by the Defendants unconstitutional on its face or, in the alternative, as applied to Sullivan.

    c.    Prohibit, by way of preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing the subpoenas for production of documents (Exhibits 18 and 19) against the Plaintiffs.

    d.    Grant the costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

    e.    Grant such other relief as may be just and equitable.

**COUNT II**
**VIOLATION OF FIRST AMENDMENT RIGHT TO SPEAK POLITICALY**
**(42 U.S.C. § 1983)**

55.    The Plaintiffs reallege the preceding paragraphs.

56.    TEC is attempting to deem any corporation which receives contributions and then uses those contributions for "direct campaign expenditures" to be operating "in concert with another person" so as to trigger the requirement that such a corporation register itself as a "general-purpose committee," with all the restrictions thereof, and file accordingly.

57.    Prior to *Citizens United v. FEC*, 558 US 310 (2010), Texas had a ban on "direct campaign expenditures."

58.     TEC is now seeking to enforce a TEX. ELEC. CODE § 254.261 so as to force nonprofit corporations such as EMPOWER to reveal the contributors to the nonprofit corporation because it deems these contributors to be acting in concert with another person, *i.e.* their fellow contributors, in order to fund an independent expenditure instead of viewing the corporation as the only person at issue under the statute. [13]  This position of the Texas Ethics Commission is completely at odds with both the letter and the spirit of the Supreme Court's decision in *Citizens United.*

59.     In *Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.2nd 535 (5th Cir. 2013), the court recognized, as did the United States Supreme Court in *Citizens United*, that the First Amendment as a general matter protects all political speech even anonymous political speech.  See *McIntyre v. Ohio Elections Commission*, 514 US 334, 347 (1995); *Buckley v. Valeo*, 424 US 1, 14-15 (1976).  The court in *Citizens United* states, "… political speech must prevail against laws that would suppress it, whether by design or inadvertence.  Laws that burden political speech are '*subject to strict scrutiny*,' which requires the government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United* at 340 (emphasis added), citing to *Federal Election Commission v. Wisconsin Right to Life (WRTL)*, 551 US 449, 464 (2007).  *Citizens United* makes it extremely clear that the "corruption or the appearance thereof" interest of the state will be insufficient to justify even the most modest restrictions when the electioneering expenditure is not coordinated with, or a contribution to, a candidate.

60.     In *FEC v. Massachusetts Citizens for Life*, 479 US 238 (1986) (MCFL), the Court discusses in detail the reporting burdens which the FEC was attempting to impose upon MCFL,

---

[13] The day after the Texas Ethics Commission issued the subpoenas to EMPOWER and Plaintiff Sullivan, the Commission began rulemaking proceedings in order to formalize this new interpretation.  Apparently Plaintiffs are to be the "test case" for Defendants.

which was a 501 (c) 4 organization. *Id* at 253-256. The burdens which the FEC sought to impose upon MCFL are nearly identical to the burdens[14] which TEC seeks to impose on EMPOWER.

61.     Additionally, the burdens TEC seeks to impose upon nonprofit organizations which receive contributions is an unconstitutional infringement upon their free speech rights. See *Davis v. FEC*, 554 US 724, 744 (2008) (compelled disclosure, in itself, can seriously infringe on privacy of association).

62.     The deferential attitude which courts usually apply to business related subpoena enforcement requests have no place where political activity and association are the subject matter being investigated. *FEC v. Machinists Nonpartisan Political League*, 655 F.2d 380 (D.C. Cir. 1981); See also *FEC v. Phillips Publishing*, 517 F.Supp. 1308 (D.D.C. 1981), *Readers Digest Ass'n v. FEC*, 509 F.Supp. 1210 (S.D.N.Y. 1981).

63.     EMPOWER's compliance with the subpoenas issued by Defendants, under color of state law, essentially provide all the information which Defendants would acquire if they successfully enforce TEX. ELEC. CODE § 254.261 to require nonprofit corporations to register as general purpose political committees and is, therefore, unconstitutional because it violates the Plaintiffs First Amendment right of free speech.

**WHEREFORE** Plaintiffs respectfully prays the Court to:

a.     Declare TEX. GOV'T CODE § 254.261 unconstitutional on its face, or in the alternative, as applied to EMPOWER;

b.     Prohibit, by way of preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing the subpoenas (Exhibits 18 and 19) against

---

[14] The Texas Ethics Commission is attempting to force compliance with Tex. Elec. Code §§ 254.031, 254.0312, 254.034, 254.035, 254.036, 254.038, 254.039, 254.040, 254.014, 254.047 and 254.151-254.164.

them.

      c.     Grant their costs of this action, including reasonable attorney's fees,

pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

      d.     Grant her such other relief as may be just and equitable.

## COUNT III
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION
## DUE TO DISPARTE TREATEMNT
## (42 .S.C. § 1983)

64.     The Plaintiffs reallege the preceding paragraphs.

65.     The enforcement scheme which Defendants, under color of state law, seek to

enforce creates two distinct classes of speakers which violates Plaintiff Sullivan's liberty interest

under the First Amendment as well as the right to equal protection of the law.

66.     A person is required to register as a lobbyist under Texas law if the person 1)

makes a total expenditure of $1,000 in a calendar quarter; 2) communicates directly [15] with one

or more members of the legislative or executive branch; and 3) with the purpose of influencing

legislation or administrative action. TEX. GOV'T CODE § 305.003.  However, seven classes of

persons, including persons employed by the media, regardless of compensation level and

intention to influence legislation, and political party employees, are exempted from the

registration requirements. TEX. GOV'T CODE § 305.004.

67.     This disparate treatment is unconstitutional.

**WHEREFORE**, Plaintiffs respectfully pray the Court to:

      a.     Declare TEX. GOV'T CODE § 305.003 unconstitutional on its face, or in the

alternative, as applied to Sullivan;

      b.     Prohibit, by way of preliminary and permanent injunction, the Defendants,

---

[15] "communicates directly with" means contact in person or by telephone, telegraph, letter, facsimile, electronic mail, or other means of electronic communication. Tex. Gov't Code § 305.002(2).

their agents, and successors from enforcing TEX. GOV'T CODE § 305.003 against them.

      c.      Grant their costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

      d.      Grant such other relief as may be just and equitable.

## COUNT IV
## VIOLATION OF FOURTEETH AMENDMENT DUE PROCESS RIGHT DUE TO SELECTIVE PROSECTION
### (42 U.S.C. § 1983)

68.     The Plaintiffs reallege the preceding paragraphs.

69.     As of February 4, 2014, there are thirty-five organizations, either nonprofit or for-profit corporations, which file expenditure only reports with TEC in the same manner as EMPOWER.[16]  However, Defendants, under color of state law, are engaged in a pattern of selective enforcement against EMPOWER as an act of political retribution.

70.     Defendants may only consider matters submitted to them in sworn complaints or items voted on by a super majority of the TEC.  TEX. GOV'T CODE § 571.121.

71.     The Complaints at issue in this case are based on "information and belief," effectively hearsay evidence, and no affirmative vote to expand the complaints to include other matters has been made by Defendants.[17]  However, Defendants are attempting, under color of state law, to alter the campaign finance and lobbying enforcement scheme in Texas by requiring any entity, which is a single person, to form itself as a general purpose political committee as opposed to an entity making independent expenditures for the sole purpose of discovering the donors to EMPOWER.

72.     In furtherance of their selective enforcement against EMPOWER, Defendants

---

[16] See http://www.ethics.state.tx.us/dfs/Direct_Expns.htm (last visited February 25, 2014).
[17] TEC Pre-Hearing Conference, Feb. 12, 2014, pg. 91 line 9 through page 94 line 23.  Exhibit 18.

have issued subpoenas for the production of documents that, if EMPOWER were forced to comply, would expand the scope of the complaints to included constitutionally protected speech and association rights of Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully pray the Court to:

      a.     Declare TEX. GOV'T CODE § 571.121 unconstitutional on its face, or in the alternative, as applied to Sullivan;

      b.     Prohibit, by way of preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing TEX. GOV'T CODE § 571.121 against them.

      c.     Grant their costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

      d.     Grant such other relief as may be just and equitable.

## COUNT V
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS
### (42 U.S.C. § 1983)

73.     The Plaintiffs reallege the preceding paragraphs.

74.     In addition to the above substantive Due Process violations, the Defendants have engaged in the above described deprivations by state action of the Plaintiffs' constitutionally protected interests without due process of law.

75.     The Plaintiffs' interest that will be affected by the official action are described above and they include, but are not limited to, their First Amendment rights to freedom of speech and their rights to engage in political speech.[18]

76.     Due to lack of procedural rules, there is a substantial risk of an erroneous

---

[18]     The First Amendment affords the broadest protection to such political expression in order "to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957).

deprivation of such interest.

77.     Additional procedural safeguards, including, but not limited to rules of procedure, rules of evidence and rules of appellate procedure (including the right of mandamus and/or interlocutory appeal) would have a substantial effect in reducing the risk described above.

78.     The TEC has previously been directed by the Legislature of the State of Texas to adopt such rules, therefore, the Legislature has acknowledged that there is no burden on the TEC, or interest that the TEC maintains in failing to adopting said rules that could overcome the Defendants rights.

**WHEREFORE**, Plaintiffs respectfully pray the Court to:

a.     Declare that the TEC's failure and refusal to adopt rules of procedure, rules of evidence and rules of appellate procedure (including the right of mandamus and/or interlocutory appeal) violates Plaintiffs' substantive and procedural Due Process rights.

b.     Grant their costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

c.     Grant such other relief as may be just and equitable.

## VII.     INJUNCTIVE RELIEF

79.     The Plaintiffs reallege the preceding paragraphs.

80.     The Plaintiffs respectfully move the Court to grant them injunctive relief, including, but not limited to, a temporary restraining order, preliminary injunction and permanent injunction restraining the enforcement of the subpoenas issued by the TEC.

## VIII.   PRAYER

**WHEREFORE** Plaintiffs respectfully prays the Court to:

a.      Declare TEX. ELEC. CODE §254.261 unconstitutional on its face, or in the alternative, as applied to Plaintiffs;

b.      Prohibit, by way of temporary, preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing TEX. ELEC. CODE §254.261 against them.

c.      Prohibit, by way of temporary, preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing the subpoenas (Exhibits 18 and 19) against them.

d.      Declare TEX. GOV'T CODE § 305.003 unconstitutional on its face, or in the alternative, as applied to Sullivan;

e.      Prohibit, by way of preliminary and permanent injunction, the Defendants, their agents, and successors from enforcing TEX. GOV'T CODE § 305.003 against them.

f.      Hold that the lack of procedural rules in the TEC violates the Plaintiffs' substantive and procedural rights to Due Process of law.

g.      Grant their costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and any other applicable authority; and

h.      Grant such other relief as may be just and equitable, whether in equity or in law.

Respectfully submitted,

BEIRNE, MAYNARD & PARSONS, L.L.P.

*J. E. Trainor, III*

James E. "Trey" Trainor, III
State Bar No. 24042052
401 W. 15th Street, Suite 845
Austin, Texas 78701

Telephone: (512) 623-6700
Facsimile: (512) 623-6701

Joseph M. Nixon
State Bar No. 15244800
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
Telephone: (713) 871-6809
Facsimile: (713) 960-1527

**ATTORNEYS FOR PLAINTIFFS**