FILED

2014 MAR 10 PM 3: 19

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CAUSE NO. 1:14-cv-00172** |
| **THE STATE OF TEXAS ETHICS COMMISSION, and NATALIA LUNA ASHLEY, in her capacity as Interim Executive Director of the Texas Ethics Commission,** | § § § § § § | |
| **Defendants.** | § § | |

## MOTION TO INTERVENE OF STEVE BRESNEN

Comes now STEVE BRESNEN, Intervenor, and files this Motion to Intervene pursuant to Fed. R. Civ. P. 24, and as grounds therefor would show as follows.

### I. Relief Requested By Intervenor

Intervenor requests the following relief, all in the alternative:

1.1.   This case should be dismissed under the *Younger* abstention doctrine.  Plaintiffs are, by admission, asking this Court to interject itself into a pending State agency proceeding, from which, adequate relief is available through the administrative process and Texas courts.

1.2.   Alternatively, if this case is not dismissed, Plaintiffs' claims should be denied.  Texas ethics laws demand, quite reasonably, that paid lobbyists disclose both the sources of their lobbying funds and the nature of their expenditures.  Nothing in the First Amendment requires Texas to allow the propagation of so-called "dark money" in election campaigns and the legislative process.

1

1.3.    Finally, in the unlikely event Plaintiffs show themselves entitled to any relief, it should be evenhanded.  The First and Fourteenth Amendments guarantee "equal protection", and also prohibit "viewpoint discrimination" in the exercise of the right of speech.  If the Plaintiffs manage to free themselves from the shackles of full and fair disclosure, then everyone else subject to these laws – including Intervenor – should be free to break them as well.

## II. Facts

*Background*

2.1.    The Texas Ethics Commission ("Commission") was created by constitutional amendment on November 5, 1991.[1]  Carefully set up for bipartisan credibility, the Commission was, and remains, the primary insurer of the integrity of Texas' governance.   Its legislative mandate underscores the agency's fundamental role in our democratic process:

> It is the policy of the legislature to protect the constitutional privilege of free suffrage by regulating elections and prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances. This chapter is intended to achieve those purposes and shall be construed to achieve the following objectives:
>
> *        *        *
>
> (2)  to eliminate opportunities for undue influence over elections and governmental actions;
>
> (3) to disclose fully information related to expenditures and contributions for elections and for petitioning the government;
>
> (4) to enhance the potential for individual participation in electoral and governmental processes; and
>
> (5) to ensure the public's confidence and trust in its government.[2]

---

[1]  Tex. Const. Art. III, Sec. 24a.
[2] Tex. Gov't Code Sec. 571.001.

2.2.   Perhaps the lynchpin of the government-integrity laws enforced by the Commission is Chapter 305 of the Texas Government Code, relating to registration, regulation and reporting of lobbyists.  The policy of the Legislature, again, is very clear:

> To preserve and maintain the integrity of the legislative and administrative processes, it is necessary to disclose publicly and regularly the identity, expenditures, and activities of certain persons who, by direct communication with government officers, engage in efforts to persuade members of the legislative or executive branch to take specific actions.

*Id.* Sec. 305.001.  While direct contact with lawmakers and executive officials is permitted (and even encouraged),Texas requires that such contacts – at least, by paid lobbyists – be made in the full light of day.  In addition, the regulations enforced by the Commission have the salutary purpose of preventing and punishing corruption.

2.3.   Intervenor knows the process well.  Decades ago, as a staffer for Lt. Governor Bob Bullock, Intervenor helped shepherd this landmark legislation through the State Capitol.  Now a registered lobbyist, he is bound by those same rules. Intervenor must include detailed client information with his registration,[3] must file activities reports of the expenditures made on behalf of those clients to influence legislation or administrative action,[3b] and is legally prohibited from participating in certain conduct – not just by himself, but also clients and public officials.[4]

2.4.   Our ethics laws, like our democracy itself, are a work in progress.  Just recently, Intervenor petitioned the Commission to adopt a new rule regarding campaign contributions. The proposed rule, which would enforce one of the two statutes challenged by Plaintiffs in this

---

[3] *Id.* Sec. 305.005(f).
[3b] *Id.* Sec. 305.006(b)
[4] *Id.* See, e.g., Subchapter B, Chapter 305 (Sec. 305.021, et seq.)

lawsuit (Tex. Gov't Code Sec. 254.261), has just been accepted for publication in the Texas Register.[4b]

2.5.   The challenged statutes are fair and create a level playing field.   Paid lobbyists for well-funded advocacy groups, including Plaintiffs, must be required to play by the same rules as Intervenor and his colleagues, who represent large and small businesses, unions, trade groups, and other citizens concerned about potential legislation and agency action.   They also must be required to comply with our laws governing disclosure of political expenditures in the same manner as other participants in the electoral process.

*Pending Administrative Proceedings*

2.6.   Commission investigations are usually set in motion by the public.   Any Texan may file with the Commission a sworn complaint that a person "has violated a rule adopted by or a law administered and enforced by the commission."[5]   The filing triggers a series of procedures, beginning with administrative review of the sufficiency of the complaint,[6] followed by an informal "probable cause"-type hearing (which can include settlement discussions).[7] If the Commission finds sufficient evidence of a violation (as it has in the complaint against Plaintiff Michael Q. Sullivan), then it may proceed to a formal hearing.[8] The Commission may also proceed to formal hearing where, as in the Empower Texans complaint, the full panoply of investigative and discovery tools is needed to overcome a respondent's refusal to cooperate.

---

[4b]   Texas Ethics Commission, proposed rule 20.68 (available online at www.ethics.state.tx.us/rules/ proposed_Feb_2014.html ).  Note: the proposed rule only applies prospectively and would not affect the current ethics complaints against Plaintiffs.
[5]   Tex. Gov't Code Sec. 571.122(a).
[6]*Id.* Sec. 571.123.
[7]*Id.* Sec. 571.124-571.125.
[8]*Id.* Sec. 571.129-571.132.

2.7.  A formal hearing is held to determine "whether a violation within the jurisdiction of the commission has occurred."[9]  If so, the Commission may impose a civil fine of not more than $5000 (or 3 times the "amount at issue", whichever is greater).[10] It may also issue a "cease and desist" letter or refer the matter for criminal prosecution.[11]  Perhaps most importantly, the results of a formal hearing may be appealed *de novo* to the State district courts.[12]  Both the Texas Open Meetings Act and the Administrative Procedure Act apply to a formal hearing.[13]

2.8.   According to the Plaintiffs' Complaint [Doc. 1], the State administrative proceedings they are seeking to enjoin began by the sworn complaints of James Keffer and Vicki Truitt, two Republican state representatives, who claimed that: (1) Plaintiff Michael Q. Sullivan failed to register as a lobbyist, as required by Chapter 305 of the Texas Government Code,[14]and (2) Plaintiff Empower Texans acted as a general purpose committee without registering as such or filing reports, or, alternatively, failed to disclose direct campaign expenditures, in violation of applicable provisions of the Texas Elections Code.[15]  Those sworn complaints survived the preliminary stages and Plaintiffs have rejected an offer of settlement of the lobby registration violation.[16]  A Notice of Formal hearing was issued on January 28, 2014,[17] and according to the evidence in Plaintiff's Complaint herein, the hearing is scheduled for April 3, 2014.[18]

---

[9]*Id.* Sec. 571.129.
[10]*Id.* Sec. 571.173
[11]*Id.* Sec. 571.171-571.172.
[12]*Id.* Sec. 571.133.
[13]*Id.* Sec. 571.139.
[14]*Verified Complaint and Application for Injunctive Relief* [Doc. 1], ex. 9, 10.
[15]*Id.* at ex. 7-8.
[16]*Id.* at ¶ 37.
[17]*Id.* at ¶ 38.
[18]*Id.* at ex. 17, p. 3.

*Proceedings in This Court*

2.9.   Plaintiffs brought the current lawsuit on February 26, 2014, claiming the Commission's enforcement actions have violated their constitutional rights.  Their "Causes of Action" can be summarized as follows:

- The statutes in question are unconstitutional on their face, or alternatively, as applied, under the First Amendment.
- The "interpretation of [the statutes] proffered by Defendants" is unconstitutional.
- The statutes in question "are being selectively enforced".
- Defendants' interpretation constitutes "retroactive" legislation.
- The exemptions in the lobby registration statute constitute "disparate treatment".
- The subpoenas issued by the Commission infringe on Plaintiffs' freedom of association.
- The proceedings lack "procedural safeguards, including, but not limited to rules of procedure, rules of evidence and rules of appellate procedure", in violation of their right to due process.

Accordingly, Plaintiffs are suing for an injunction against all enforcement proceedings, a declaration that the statutes in question (and/or the Commission's enforcement of those statutes) are unconstitutional, and related relief.[19]

### III.  Grounds for Intervention

3.1.   Rule 24, Federal Rules of Civil Procedure, allows a party to intervene under two circumstances, as relevant here:

A.   As a matter of right, if the intervenor:

"... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest";[20] and

B.   In the Court's discretion, if the intervenor:

"... has a claim or defense that shares with the main action a common question of law or fact."[21]

---

[19]  See generally, *id.* at p. 13-22.
[20]  FRCP 24(a)(2).
[21]  FRCP 24(b)(1)(B).

Intervenor seeks leave under both provisions, for the reasons detailed below.

*Intervention as a Matter of Right*

    3.2.  To succeed as an intervenor of right, a party must show, in addition to timeliness:

(1) it has an interest relating to the property or transaction in the litigation;

(2) the disposition of the action may impair or impede, as a practical matter, its ability to protect that interest; and

(3) the intervenor's interest is inadequately represented by existing parties to the suit.[22]

    3.3.  Intervenor's interest in the current transaction is both proprietary and civic.  As a citizen, Intervenor has a demonstrated concern for the preservation and improvement of Texas ethics laws.  (He did, in fact, help to get the challenged laws enacted.)  Representing no one but himself, he successfully petitioned the Commission to publish proposed rules implementing and clarifying the very same campaign finance laws Plaintiffs are striving to toss out. In addition, Intervenor is an active participant in the proceedings sought to be enjoined. (Intervenor assisted in the preparation of the complaints on which the upcoming APA hearing is based and is a critical witness.  One of the Commissioners described him as a "de facto complainant").[23]

    3.4.  As a professional, Intervenor has a business interest in ensuring that paid *unregistered* lobbyists not be given a leg up.  As the rules exist today, a client who wants to put money into promoting or defeating legislation faces a middling burden:  He may not do so anonymously.  The client may hire a lobbyist, but he must comply with the laws regulating the conduct of registered lobbyists and their clients; his identity – and the lobbyist's expenditures – will be available to the public. *Unregistered* lobbyists, by contrast, work under no such strictures, which allows them to command the business of secrecy-seeking would-be influencers.

---

[22] *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291, 293 (5th Cir. 2012).
[23] *Verified Complaint and Application for Injunctive Relief* [Doc. 1], ex. 17, p. 118.

Intervenor, and his colleagues who follow the rules, have a right to not be disadvantaged in favor of the rulebreakers.[24]

3.5.   The second element – that the above-described interest might be impaired by the disposition of this action – is evident.  The relief Plaintiffs are seeking in this action would not just terminate the administrative action pending against them; it would utterly eviscerate Texas' lobbying and campaign finance laws – and cripple the agency charged with guaranteeing the integrity of our State government.  This would wholly undermine what Intevenor and countless others worked hard to accomplish, and what they comply with daily themselves.

3.6.   The final element asks whether Intervenor's interest is adequately protected by the existing parties to the case.  While it is certainly true that both Intervenor and Defendants should want to defeat the Plaintiffs' claims (albeit for different reasons)[25] their interests diverge in the unlikely event any relief should be granted. Intervenor seeks to be put on a level playing field with Plaintiffs. The State defendants, presumably, will seek to preserve whatever remnants of the ethics laws still exist.  Although Intervenor believes the Plaintiffs' hope of success is remote, if their case has any hint of merit, Intervenor is entitled to a seat at the table.

---

[24]  Counsel for Plaintiffs offered a grotesque funhouse-mirror version of this argument during the Commission's Feb. 12, 2014 prehearing conference:

> MR. NIXON:  The lobby statute only benefits registered lobbyists.  It empowers them.  It empowers them because they are the ones who have access to their elected officials.

*Id.* at ex. 17, p. 103.  Contrary to counsel's sentiments, lobbyists are not empowered because they register; it is far more accurate to say they register because they are empowered.  Plaintiffs' heroic efforts to exempt themselves from the registration requirements is perhaps the best example of why registration is not, *eo ipso*, the key to empowerment.

[25]  Cf. *Miller v. Blackwell*, 348 F.Supp.2d 916, n. 3 (S.D.Ohio 2004) (noting, in election law challenge, that state defendants had interest in efficient and accurate voting counts, whereas intervenors sought to prevent dilution of their votes).

*Discretionary Intervention*

3.7.  If intervention is not afforded as a matter of right, the Court should grant leave to intervene under its discretionary power in Fed. R. Civ. P. 24(b)(1)(B), which asks only whether Intervenor's claim or defense shares a common question of law or fact with the existing dispute. Intervenor's claims and defenses are unquestionably related to the current action.  The current Motion to Intervene is timely, and granting it would not upset the orderly adjudication of this case.  Finally, Intervenor submits these proceedings would be well-served by a member of the regulated industry whose laws are under assault present to give his voice.

### IV.  Grounds for Relief

Younger *Abstention*

4.1.  The *Younger*[26] abstention doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an "ongoing state judicial proceeding"; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges."[27]

4.2.  The first element is clearly satisfied.  Plaintiffs must freely admit they are seeking this Court's interference in an ongoing adjudicative matter. It is, in fact, in their prayer for relief.

4.3.  As for the second element, it can hardly be doubted that the State has an "important interest"in lobbyist and campaign finance disclosure.[28]

4.4.  Plaintiffs' Complaint – and, presumably, their underlying reason for seeking federal intervention – focuses on the third requirement: the adequacy of the administrative process to

---

[26]*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
[27]*Bice v. Louisiana Public Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012), citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).
[28] See *In re Cao*, 619 F.3d 410, 427 (5th Cir. 2010), *cert. denied*, 131 S.Ct. 1718, 179 L.Ed.2d 615 (2011) (highlighting importance of state campaign finance disclosure laws).

address their constitutional concerns.  In fact, to read Plaintiffs' Complaint in detail, it is possible to conclude there are *no* established standards, nor any right of review, whatsoever.  This is simply incorrect.

4.5.  A formal hearing before the Commission – as stated above – is governed by both the Texas Administrative Procedure Act and the Open Meetings Act.[29]  Such proceedings – which include the right to *de novo* judicial review, are well sufficient to entertain all of Plaintiffs' constitutional arguments.[30] Texas courts can – and frequently do – consider First Amendment challenges in an appeal of a final agency action.[31] There is no reason why the Plaintiffs' facial and as-applied[32] challenges to the statutes in question cannot be handled similarly.

4.6.  Plaintiffs' complaints about the proceedings themselves are likewise perfectly susceptible to review in Texas courts.  Those complaints fall into two general categories: (1) due process claims that the proceedings "lack procedural safeguards"; and (2) freedom-of-association claims that the subpoenas issued by the Commission are overbroad.

4.7.  Regarding the due process claims, Intervenor would note that Plaintiffs' complaints as to lack of "procedural safeguards" are simply incorrect.  The proceedings are governed by the APA (Tex. Government Code chapter 2001), a comprehensive regime for the adjudication and appeal of administrative disputes.  The APA specifically incorporates the Texas Rules of Evidence[33], the right to cross-examine witnesses,[34] and the right to obtain discovery.[35]  Moreover

---

[29]Tex. Gov't Code Sec. 571.139.
[30] See *Ohio Civil Rights Com'n v. Daytona Christian Schools, Inc.*, 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 912 (1986) ("adequate opportunity" exists if "constitutional claims may be raised in state-court judicial review of the administrative proceeding").
[31]Eg.,*Allen-Burch, Inc. v. Texas Alc. Bev. Com'n*, 104 S.W.3d 345, 353 (Tex.App.—Dallas 2003, no pet.).
[32]  The as-applied challenges asserted by Plaintiff are interesting, inasmuch as they are challenging an "interpretation" of the statutes the agency has not yet made.  This raises the possibility that another abstention doctrine – *Pullman* or *Burford* – may also come into play.  *Moore v. State Farm Fire & Cas. Co.*, 566 F.3d 264, 272-273 (5th Cir. 2009) (explaining *Pullman* and *Burford* doctrines, both of which involve deferring to state's resolution of "unsettled state law").
[33]Tex. Gov't Code Sec. 2001.081.

– and more importantly, as far as the abstention issue is concerned – Plaintiffs are perfectly free to raise their due process claims as part of their *de novo* appeal.[36]

4.8.   The Plaintiffs' complaints about the Commission subpoenas betray a fundamental misunderstanding of State administrative law.   Administrative subpoenas are *issued* by the agency,[37] but they are *enforced* in court.[38]  Respondents may seek to quash a subpoena in the manner "provided by law".[39]  In light of these procedures, it can hardly be argued that Plaintiffs' State law remedies are inadequate.   Accordingly, all three requirements of the *Younger* abstention doctrine are satisfied.[40]

4.9.   On a related point, Intevenor notes the Supreme Court has very recently clarified that *Younger* abstention should be exercised as to only three types of state judicial proceedings.[41] One of those is "civil enforcement proceedings" involving "important state interests".   Such proceedings are quasi-criminal, in that they typically involve investigations, culminating in the filing of "a formal complaint or charges", and the state itself is usually a party.[42]  The State administrative proceedings under attack fall squarely within this box.[43]

4.10  The recent 8th Circuit opinion in *Geier v. Missouri Ethics Com'n*,[44] which dismissed a virtually identical lawsuit under *Younger* abstention, is attached as an appendix to this Motion.

---

[34]*Id.* Sec. 2001.087.
[35]*Id.* Sec. 2001.090 *et seq.*.
[36] Tex. Gov't Code Sec. 2001.173 (in *de novo* appeal, "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action").
[37]Tex. Gov't Code Secs.571.137(a), 2001.089.
[38]*Id.* Sec. 571.137(c), 2001.201.
[39]*Id.* Sec. 571.137(d).
[40]  There are three "narrowly delineated exceptions" to the doctrine: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived. *Bice,* 677 F.3d at n. 3.  None of those exceptions are present here.
[41]*Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 591,187 L.Ed.2d 505 (2013).
[42]134 S.Ct at 592.
[43] Cf. *Middlesex*, 457 U.S. at 435 (applying *Younger* to attorney ethics complaint).
[44]715 F.3d 674 (8th Cir. 2013). [See, App'x 1]

*Plaintiffs' Claims Lack Merit*

4.11.   Even if they should not be dismissed out of hand, the Plaintiffs' claims should be denied.   As currently stated, the claims are too vague, and the facts supporting them not sufficiently stated, to address them one by one.   However, Intervenor would state that as a general matter, the statutes in question have been in existence for two decades and are generally regarded in the profession as fair and reasonably straightforward, and not unlike laws that have been upheld at the federal level and in many other states.   Plaintiffs may think they have found a First Amendment ticket to returning lobbying and campaign finance to the shadows, but they are wrong.

4.12.   Plaintiffs' Complaint grossly misstates many facts, as well as the applicable law.[45] Intervenor will file an answering statement promptly upon this Court's approval of this Motion.

*Affirmative Claim for Relief: Equal Protection and Freedom From "Viewpoint Discrimination"*

4.13.   As stated, Intervenor and countless others worked hard to craft a framework of electoral and legislative/administrative ethics that promotes both free speech and accountability. Plaintiffs claim to occupy an exalted position that exempts them from the system.   Intervenor disagrees.

4.14.   If for any reason Plaintiffs find relief in this Court, they are *still* not better than anyone else.   The First and Fourteenth Amendments guarantee equal protection under the laws, and forbid "viewpoint discrimination" in the exercise of the right to speak.   Any relief Plaintiffs

---

[45] Plaintiffs' ostensibly un-ironic reliance on *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1499 (1958) is particularly galling.  Suffice to say, that opinion does not provide the blanket exemption from disclosure that Plaintiffs seek.  See *Citizens United v. F.E.C.*, 558 U.S. 310, 371, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010):

> The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.

receive should be granted across the board to Intervenor and all other professionals and other citizens subject to the statutes under review.

WHEREFORE, PREMISES CONSIDERED, Intervenor prays this Court GRANT the Motion to Intervene, DISMISS or DENY the Plaintiffs' claims, and for such other and further relief to which Intervenor would show himself justly entitled.

Respectfully submitted,

Law Office of Anatole Barnstone
713 West 14th Street
Austin, TX 78701
Phone: (512).327-2600
Fax: (512) 482-8095

/s/Anatole Barnstone

Anatole Barnstone
State Bar #: 00793308
*ATTORNEY FOR INTERVENOR*
*STEVE BRESNEN*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the ___10th___ day of March, 2014 via the Court's Electronic Filing System on the following counsel for Parties herein:

James Edwin Trainor, III
Beirne Maynard & Parsons, LLP
401 West 15th Street, Ste. 845
Austin, Texas 78701
Fax: 512. 623.6701

Joseph M. Nixon
Beirne Maynard & Parsons, LLP
1300 Post Oak Blvd., Ste. 2500
Houston, TX 77056
Fax: 713.960.1527

/s/Anatole Barnstone

Anatole Barnstone

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CAUSE NO. 1:14-cv-00172 |
| THE STATE OF TEXAS ETHICS COMMISSION, and NATALIA LUNA ASHLEY, in her capacity as Interim Executive Director of the Texas Ethics Commission, | § § § § § § | |
| Defendants. | § | |

## APPENDIX WITH MOTION TO INTERVENE OF STEVE BRESNEN

Appendix 1: *Geier v. Missouri Ethics Com'n,* 15 F.3d 674 (8th Cir. 2013).

Westlaw.

APPENDIX 1

Page 1

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

**c**

United States Court of Appeals,
Eighth Circuit.
Gerald GEIER; Stop Now!, Plaintiffs–Appellants
v.
MISSOURI ETHICS COMMISSION; Dennis
Rose; Vernon Dawdy; John Munich; Louis J.
Leonatti; William Stoltz; Charles E. Weedman,
Defendants–Appellees.

No. 12–3853.
Submitted: April 9, 2013.
Filed: May 21, 2013.

**Background:** Political action committee and one of
its founders brought action against Missouri Ethics
Commission and several of its members, seeking to
enjoin a state enforcement proceeding. The United
States District Court for the Western District of
Missouri, Nanette K. Laughrey, J., abstained under
*Younger* doctrine and denied plaintiffs' motion to
amend complaint as moot. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Shepherd, Circuit
Judge, held that:
(1) District Court properly denied leave to amend,
and
(2) District Court did not abuse its discretion in
deciding to abstain, under *Younger*, from exercising
federal jurisdiction over action.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ☞3587(1)**

170B Federal Courts
   170BXVII Courts of Appeals
      170BXVII(K) Scope and Extent of Review
         170BXVII(K)2 Standard of Review
            170Bk3576 Procedural Matters
               170Bk3587 Pleading
                  170Bk3587(1) k. In general.

Most Cited Cases
   (Formerly 170Bk817, 170Bk776)
   The Court of Appeals reviews the district
court's denial of a motion to amend a complaint for
an abuse of discretion, and issues regarding an
amendment's futility de novo. Fed.Rules
Civ.Proc.Rule 15(a)(1)(A), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞1838**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1837 Effect
               170Ak1838 k. Pleading over. Most
Cited Cases
   Although a party may have lost its right to
amend its complaint after dismissal, it could still
file a motion for leave to amend; granting such a
motion for leave to amend is inappropriate,
however, if the district court has indicated either
that no amendment is possible or that dismissal of
the complaint also constitutes dismissal of the
action. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ☞1838**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1837 Effect
               170Ak1838 k. Pleading over. Most
Cited Cases
   Dismissing a complaint constitutes dismissal of
the action, thereby precluding party's right to
amend, when court states or clearly indicates no
amendment is possible, that is, when the complaint
is dismissed with prejudice or with express denial
of leave to amend, or when circumstances
otherwise indicate that no amendment is possible
such as when a limitations period has expired; if,
however, the order does not expressly or by clear

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

implication dismiss the action, the order only dismissed the complaint, and thus the party may amend the complaint with the court's permission. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[4] Federal Courts 170B ⟨⟨⟩2687**

170B Federal Courts
    170BIX Right to Decline Jurisdiction; Abstention
        170BIX(E) Objections, Proceedings, and Determination
           170Bk2687 k. Pleadings and motions. Most Cited Cases
    (Formerly 170Bk65)
   District Court properly denied political action committee and one of its founders leave to amend its complaint against Missouri Ethics Commission and several of its members, which sought to enjoin a state enforcement proceeding; before committee moved to amend complaint, District Court abstained under *Younger*, and court later issued an order clarifying that its decision to abstain constituted dismissal of entire action. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[5] Federal Courts 170B ⟨⟨⟩2696**

170B Federal Courts
    170BIX Right to Decline Jurisdiction; Abstention
        170BIX(E) Objections, Proceedings, and Determination
           170Bk2695 Dismissal or Other Disposition
           170Bk2696 k. In general. Most Cited Cases
    (Formerly 170Bk65)
   Where *Younger* abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings.

**[6] Federal Civil Procedure 170A ⟨⟨⟩851**

170A Federal Civil Procedure

170AVII Pleadings
    170AVII(E) Amendments
        170Ak851 k. Form and sufficiency of amendment; futility. Most Cited Cases
   A district court's denial of leave to amend a complaint may be justified if the amendment would be futile. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⟨⟨⟩851**

170A Federal Civil Procedure
    170AVII Pleadings
        170AVII(E) Amendments
        170Ak851 k. Form and sufficiency of amendment; futility. Most Cited Cases
   While Federal Rule of Civil Procedure governing amendment of pleadings is broadly construed to allow amendments, district courts need not indulge in futile gestures. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[8] Federal Courts 170B ⟨⟨⟩3581(3)**

170B Federal Courts
    170BXVII Courts of Appeals
      170BXVII(K) Scope and Extent of Review
        170BXVII(K)2 Standard of Review
          170Bk3576 Procedural Matters
           170Bk3581 Jurisdiction
             170Bk3581(3) k. Abstention. Most Cited Cases
    (Formerly 170Bk813)
   The Court of Appeals reviews a district court's decision to abstain, under *Younger*, from exercising federal jurisdiction over action for abuse of discretion.

**[9] Federal Courts 170B ⟨⟨⟩3565**

170B Federal Courts
    170BXVII Courts of Appeals
      170BXVII(K) Scope and Extent of Review
        170BXVII(K)2 Standard of Review
        170Bk3563 Discretion of Lower Court in General
          170Bk3565 k. Abuse of discretion

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

in general. Most Cited Cases
(Formerly 170Bk812)

A district court "abuses its discretion," thereby subjecting its decision to reversal on appeal, when it makes an error of law.

**[10] Federal Courts 170B ⋘══2578**

170B Federal Courts
      170BIX Right to Decline Jurisdiction; Abstention
         170BIX(A) In General
           170Bk2578 k. Younger abstention. Most Cited Cases
      (Formerly 170Bk46, 170Bk41)

The *Younger* abstention doctrine provides that courts should not exercise federal jurisdiction where: (1) there is an ongoing state proceeding; (2) which implicates important state interests; and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding.

**[11] Federal Courts 170B ⋘══2621**

170B Federal Courts
      170BIX Right to Decline Jurisdiction; Abstention
         170BIX(B) Particular Cases, Contexts, and Questions
           170Bk2620 Elections, Voting, and Political Rights
           170Bk2621 k. In general. Most Cited Cases
      (Formerly 170Bk53)

District Court did not abuse its discretion in deciding to abstain, under *Younger*, from exercising federal jurisdiction over action brought by political action committee and one of its founders against Missouri Ethics Commission and several of its members, seeking to enjoin a state enforcement proceeding; Missouri allowed for judicial review of final administrative decisions, including analysis of whether an agency's action constituted a violation of constitutional provisions, and Missouri statutory scheme governing political action committees was not flagrantly and patently violative of express

constitutional provisions for action to fall within exception to *Younger*. V.A.M.S. §§ 536.100, 536.140(2)(1).

**[12] Federal Courts 170B ⋘══2599**

170B Federal Courts
      170BIX Right to Decline Jurisdiction; Abstention
         170BIX(B) Particular Cases, Contexts, and Questions
           170Bk2599 k. Particular constitutional rights in general. Most Cited Cases
      (Formerly 170Bk53)

Merely invoking the First Amendment does not automatically exclude the application of the *Younger* abstention doctrine. U.S.C.A. Const.Amend. 1.

**[13] Federal Courts 170B ⋘══2575**

170B Federal Courts
      170BIX Right to Decline Jurisdiction; Abstention
         170BIX(A) In General
           170Bk2575 k. Pullman abstention. Most Cited Cases
      (Formerly 170Bk46, 170Bk41)

**Federal Courts 170B ⋘══2698**

170B Federal Courts
      170BIX Right to Decline Jurisdiction; Abstention
         170BIX(E) Objections, Proceedings, and Determination
           170Bk2695 Dismissal or Other Disposition
           170Bk2698 k. Reservation or retention of jurisdiction. Most Cited Cases
      (Formerly 170Bk65)

*Pullman* abstention has been developed to avoid federal courts incorrectly deciding unsettled state-law questions which preceded federal constitutional issues; to accomplish this, parties were remitted to state courts to litigate their state-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

law issues, but could return to federal court to adjudicate their federal-law claims if the resolution of the state-law issue did not prove dispositive of the case.

**\*675** W. Bevis Schock, Saint Louis, MO, argued (Hugh A. Eastwood, Saint Louis, MO, on the brief), for appellants.

**\*676** Andrew W. Blackwell, Asst. Atty. Gen., Jefferson City, MO, argued (Chris Koster, Atty. Gen., Peggy A. Whipple, Asst. Atty. Gen., on the brief), for appellees.

Before COLLOTON and SHEPHERD, Circuit Judges, and ROSE,[FN1] District Judge.

> FN1. The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, sitting by designation.

SHEPHERD, Circuit Judge.

Seeking to enjoin a state enforcement proceeding, Gerald Geier and Stop Now! (collectively, "Stop Now!") filed this lawsuit in federal court against the Missouri Ethics Commission and several of its members (collectively, the "Commission"). The district court[FN2] abstained under the *Younger* doctrine and subsequently denied Stop Now!'s motion to amend its complaint as moot, having declined jurisdiction over the case. We affirm.

> FN2. The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

### I.

Gerald Geier and others formed Stop Now!, a political action committee, in 1991 to oppose tax increases in the Kansas City area. By 2002, Stop Now! was no longer active but continued filing statements of limited activity until 2011. On April

2, 2012, the Commission brought an enforcement action against Stop Now!, alleging that it had failed to file ongoing reports and other required documentation. In response, Stop Now! brought this action in federal court against the Commission on November 20, 2012. Stop Now! alleged that the Commission's enforcement action violated the First Amendment and sought a preliminary injunction, a permanent injunction, and a declaration that Geier had no personal liability.

On November 30, 2012, the district court held a telephonic hearing and sua sponte raised the issue of whether it should abstain under the *Younger* doctrine.[FN3] After hearing arguments from both sides, the district court announced during the hearing its decision to abstain. It found that the Missouri state proceedings, through its administrative and appellate process, provided an adequate forum for Stop Now! to raise constitutional issues.

> FN3. The *Younger* abstention doctrine stems from the Supreme Court's decision in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* the Supreme Court "held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The Court's decision was based "on equitable principles and on the more vital consideration of the proper respect for the fundamental role of States in our federal system." *Id.* (internal citation and quotation marks omitted). Although *Younger* was a state criminal proceeding, the Supreme Court later extended the doctrine's application to civil proceedings and state administrative proceedings. *See id.* at 627, 106 S.Ct. 2718.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

On December 3, 2012, Stop Now! filed a motion seeking to amend its complaint to include factual allegations that Geier's political speech had been chilled as a result of the Commission's proceedings. In its motion, Stop Now! acknowledged that it "underst[ood] that the court has declined to accept jurisdiction under the *Younger* Abstention doctrine," but that "[t]he purpose of this Motion is to ensure that the record is complete in the Eighth Circuit." The district court then issued an order on December 5, 2012, explaining that "[p]er the Court's oral order during the hearing of 11/30/12, the Court abstains under the ***677** *Younger* doctrine and the case is dismissed." As a result, Stop Now!'s motion to file an amended complaint was "dismissed as moot."

**II.**

Stop Now! raises two issues on appeal. First, it contends that the district court erred by refusing to allow it to amend its complaint. Second, Stop Now! argues the district court abused its discretion by abstaining under the *Younger* doctrine.

**A.**

[1] Stop Now! contends that the district court erred by denying its motion to amend because it was entitled to amend its pleading "as a matter of course" within 21 days after serving its complaint, citing Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure. We review the district court's denial of the motion to amend a complaint for an abuse of discretion and issues regarding an amendment's futility de novo. *United States ex rel. Roop v. Hypoguard USA, Inc.,* 559 F.3d 818, 822 (8th Cir.2009). The Federal Rules of Civil Procedure allow a party to "amend its pleading once as a matter of course within ... 21 days after serving it." Fed.R.Civ.P. 15(a)(1)(A). And while amendments to a party's complaint should be liberally granted, "different considerations apply to motions filed after dismissal." *Dorn v. State Bank of Stella,* 767 F.2d 442, 443 (8th Cir.1985) (per curiam).

[2][3] We have previously held that after a court dismisses a complaint, a party's right to amend under Rule 15 terminates. *Id.* (citing *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO,* 724 F.2d 1552, 1556 n. 6 (11th Cir.1984)). But although a party may have lost its *right* to amend, it could still file a motion for *leave* to amend its complaint. *Id.* Granting such a motion for leave to amend is inappropriate, however, if the district court has "indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action." *Id.* (quoting *Czeremcha,* 724 F.2d at 1556 n. 6). This distinction—between a dismissal of a complaint and a dismissal of an entire action—depends on whether the court intended the dismissal to be a final, appealable order. *See Czeremcha,* 724 F.2d at 1555–56. "[D]ismissing a complaint constitutes dismissal of the action when it states or clearly indicates that no amendment is possible—e.g., when the complaint is dismissed with prejudice or with express denial of leave to amend—or when circumstances otherwise indicate that no amendment is possible—e.g., when the limitations period has expired." *Whitaker v. City of Houston, Tex.,* 963 F.2d 831, 835 (5th Cir.1992). If, however, the "order does not expressly or by clear implication dismiss the *action*," under *Czeremcha,* the order only dismissed the complaint, and thus the party may amend under Rule 15(a) with the court's permission. *Id.* With these principles in mind, we turn to the procedural history in this case.

[4][5] Stop Now!'s attorney indicated during the telephonic hearing on November 30, 2012, that he intended to file an amended complaint alleging that his client's speech was chilled. At oral argument, counsel conceded that this statement alone did not constitute an oral motion to amend under Rule 15.[FN4] Thus, during the ***678** November 30, 2012 hearing, before Stop Now! moved to amend the complaint, the district court abstained under *Younger.* Then, on December 3, 2012, Stop Now! filed a motion to amend its complaint to include the allegation that Geier's political speech had been chilled as a result of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

Commission's enforcement proceeding. Two days later, on December 5, 2012, the district court issued an order clarifying that its decision to abstain constituted dismissal of the entire action. "Where *Younger* abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings." *Tony Alamo Christian Ministries v. Selig,* 664 F.3d 1245, 1251 (8th Cir.2012). As a result, because the entire case had been dismissed before Stop Now! moved to amend, granting leave to amend would have been improper. *See Dorn,* 767 F.2d at 443 (holding that granting leave to amend is inappropriate when district court dismisses entire action).

> FN4. Counsel is correct. This court has held that even though motions to amend are to be given freely under Rule 15, "[t]he particularity requirement of Rule 7(b) is met by submitting a proposed amendment with the motion for leave to amend the complaint." *Wolgin v. Simon,* 722 F.2d 389, 394 (8th Cir.1983); see also *Clayton v. White Hall Sch. Dist.,* 778 F.2d 457, 460 (8th Cir.1985) ("It is clear, however, that in order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion.").

[6][7] Even assuming that the action was not completely dismissed until the district court filed its December 5, 2012 order, we conclude that any error was harmless because Stop Now!'s proposed amendment to its complaint was futile. A district court's denial of leave to amend a complaint may be justified if the amendment would be futile. *Crest Const. II, Inc. v. Doe,* 660 F.3d 346, 358 (8th Cir.2011). And while Rule 15 is broadly construed to allow amendments, district courts need not "indulge in futile gestures." *Holloway v. Dobbs,* 715 F.2d 390, 392–93 (8th Cir.1983) (per curiam). Here, the substance of the amendment merely incorporated a factual argument alleging that

Geier's speech was chilled. The district court had already considered this argument during the hearing before making its ruling on the applicability of the *Younger* abstention doctrine. Therefore, we conclude Stop Now!'s attempt to amend the complaint was futile.

**B.**

[8][9] Next, Stop Now! contends that the district court misapplied the *Younger* abstention doctrine because Missouri's statutory scheme is patently unconstitutional based on *Minnesota Citizens Concerned for Life v. Swanson,* 692 F.3d 864 (8th Cir.2012) (en banc). "We review the district court's decision to abstain under *Younger* for abuse of discretion." *Night Clubs, Inc. v. City of Fort Smith, Ark.,* 163 F.3d 475, 479 (8th Cir.1998). A district court abuses its discretion when it makes an error of law. *See United States v. Weiland,* 284 F.3d 878, 882 (8th Cir.2002); *Plouffe v. Ligon,* 606 F.3d 890, 894–95 (8th Cir.2010) (Colloton, J., concurring).

[10] The *Younger* abstention doctrine provides that courts should not exercise federal jurisdiction where "(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe,* 606 F.3d at 892. Stop Now! concedes that the first two prongs are satisfied. As a result, we must determine whether the third prong is satisfied or, alternatively, whether an exception applies. We discuss these two issues in turn.

[11] First, Stop Now! carries the burden of demonstrating the Missouri proceedings do not provide an "adequate opportunity" for it to raise its constitutional **\*679** claims. *See Plouffe,* 606 F.3d at 893. On appeal, Stop Now! does not explain why the Missouri administrative system would not allow it to adequately raise constitutional claims.[FN5] In fact, Missouri allows for judicial review of final administrative decisions. *See* Mo.Rev.Stat. § 536.100 (providing that litigant who exhausted administrative remedies is entitled to judicial

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

review); *see also Missouri Ethics Comm'n v. Cornford,* 955 S.W.2d 32, 33 (Mo.Ct.App.1997) (reviewing Administrative Hearing Commission decision adverse to the Missouri Ethics Commission). Further, Missouri's statutory framework provides that the scope of judicial review includes analyzing whether the agency's action constituted a "violation of constitutional provisions." Mo.Rev.Stat. § 536.140(2)(1). Therefore, we conclude Stop Now! has failed to establish that it will not have an adequate opportunity to raise its constitutional claims through the Missouri administrative process; consequently, *Younger* abstention was appropriate unless and exception applies.

> FN5. Indeed, Stop Now! has actually raised its constitutional challenges before the Missouri Administrative Hearing Commission. While this satisfies the requirement that a plaintiff "must at least attempt to raise its federal claims in state court before we will consider its argument that it is impossible to do so," *Night Clubs,* 163 F.3d at 481 (internal quotation marks and citation omitted), it does not follow that, as a result, abstention is inappropriate, as Stop Now! argues.

Second, Stop Now! alternatively argues that this case is an exception to the *Younger* abstention doctrine because it concerns the First Amendment. In *Younger,* the Supreme Court suggested that an exception, making abstention improper, might exist if a state's statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger v. Harris,* 401 U.S. 37, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (internal quotation marks omitted). This is an "extremely narrow exception." *Plouffe.* 606 F.3d at 894.

According to Stop Now!, the Missouri statutory scheme governing political action committees is unconstitutional in light of our recent decision in *Minnesota Citizens.* Additionally, Stop Now! contends that the district court should have refused to abstain because the statute was plainly unconstitutional, citing *City of Houston, Tex. v. Hill,* 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Relying on the Supreme Court's language in *Hill* that it was "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment," 482 U.S. at 467, 107 S.Ct. 2502, Stop Now! argues that abstention is inappropriate when First Amendment issues are implicated. Stop Now!'s reliance on *Minnesota Citizens* and *Hill* is misplaced.

*Minnesota Citizens* addressed Minnesota subjecting "political funds to the same regulatory burdens as PACs." 692 F.3d at 872. Stop Now!, however, is a PAC and not the same type of small association or partnership the court considered in *Minnesota Citizens.* Therefore, this court's holding in *Minnesota Citizens,* concerning specific provisions of Minnesota's campaign finance statutes, does not make Missouri's separate statutory scheme "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph." *See Younger,* 401 U.S. at 53, 91 S.Ct. 746 (internal quotation marks omitted).

[12][13] Stop Now! also relies heavily on *Hill,* but *Hill* was a *Pullman*[FN6] abstention case that neither addressed *Younger* **\*680** nor concerned an ongoing state enforcement proceeding. *See Hill,* 482 U.S. at 455, 107 S.Ct. 2502. Moreover, *Hill* does not preclude the application of *Younger* abstention whenever a First Amendment concern is raised. Merely invoking the First Amendment does not automatically exclude the application of the *Younger* abstention doctrine. To the contrary, this court has applied *Younger* abstention in cases raising First Amendment issues. *See Tony Alamo Christian Ministries v. Selig.* 664 F.3d 1245, 1250 (8th Cir.2012) (First Amendment challenge alleging state's case plan for children violated Free Exercise

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

715 F.3d 674, 85 Fed.R.Serv.3d 1070
**(Cite as: 715 F.3d 674)**

Clause); *Night Clubs,* 163 F.3d at 481 (First Amendment challenge to exotic dancing restriction). Aside from alleging that Geier's speech has been chilled, Stop Now! has not explained how the Missouri statute is unconstitutional in "every clause, sentence and paragraph," and thus it cannot meet this "extremely narrow exception." *See Plouffe,* 606 F.3d at 894 (internal quotation marks omitted).

> FN6. *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention was developed to avoid federal courts incorrectly deciding unsettled state-law questions which preceded federal constitutional issues. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). To accomplish this, parties were remitted to state courts to litigate their state-law issues, but could return to federal court to adjudicate their federal-law claims if the resolution of the state-law issue "did not prove dispositive of the case." *Id.*

In sum, Stop Now! has failed to carry its burden of proving that it cannot adequately raise its constitutional issues in Missouri's administrative proceedings or courts, nor can it meet the narrow exception recognized by *Younger.* Therefore, we affirm the district court's decision to abstain.

### III.

Based on the foregoing, we affirm.[FN7]

> FN7. Additionally, we grant Stop Now!'s motion to supplement the record.

C.A.8 (Mo.),2013.
Geier v. Missouri Ethics Com'n
715 F.3d 674, 85 Fed.R.Serv.3d 1070

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| | § | **CAUSE NO. 1:14-cv-00172** |
| **THE STATE OF TEXAS ETHICS COMMISSION, and NATALIA LUNA ASHLEY, in her capacity as Interim Executive Director of the Texas Ethics Commission,** | § § § § § § | |
| **Defendants.** | § § | |

## ORDER ON MOTION TO INTERVENE OF STEVE BRESNEN

CAME ON THIS _____ DAY OF _____, 2014  for consideration, the Motion to Intervene pursuant to Fed. R. Civ. P. 24 as filed by Steve Bresnen as well as any responses to same. This Court finds that the Motion should be [check one]:

_____ GRANTED under FRCP 24(a)(2);

_____ GRANTED under FRCP 24(b)(1)(B);

_____ DENIED.


Signed on this date: _____



_____
Judge Sam Sparks
U.S. District Court, Western District of Texas

1